SOUTH PLAINFIELD BOROUGH, PLAINTIFF-APPELLANT, v.
KENTILE FLOORS, INC., DEFENDANT-RESPONDENT.

SOMERVILLE INDUSTRIAL PARK, PLAINTIFF-RESPONDENT,
v. BOROUGH OF SOUTH PLAINFIELD,
DEFENDANT-APPELLANT.

Argued November 22, 1982—Decided March 16, 1983.

*Sanford E. Chernin* argued the cause for appellant (*Chernin & Freeman,* attorneys).

*D. Bruce Unger* argued the cause for respondent Kentile Floors, Inc. (*Hutt, Berkow, Hollander & Jankowski,* attorneys).

*Carl G. Weisenfeld* argued the cause for respondent Somerville Industrial Park (*Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney,* attorneys; *Carl G. Weisenfeld* and *Todd M. Sahner,* on the brief).

The opinion of the Court was delivered by

POLLOCK, J.

These appeals require us to determine the applicability of *N.J.S.A.* 54:2–43, the Freeze Act, to a consent judgment entered by the Tax Court pursuant to a settlement. For the assessment year and the two succeeding years, the Act "freezes" municipal property assessments in disputed cases resolved by a final judgment of the Tax Court. In *South Plainfield Borough v. Kentile Floors, Inc.,* one part of the Appellate Division affirmed a judgment of the Tax Court applying the Freeze Act to a consent judgment. In *Somerville Industrial Park v. Borough of South Plainfield,* however, another part of the Appellate Division ruled

that the Freeze Act did not automatically apply to a consent judgment at the request of the taxpayer alone and remanded the matter to the Tax Court. We hold that the Act applies at the option of the taxpayer when final judgment is entered as the result of a settlement. Therefore, we affirm the judgment of the Appellate Division in *South Plainfield Borough v. Kentile Floors, Inc.* and reverse that court's judgment in *Somerville Industrial Park v. Borough of South Plainfield.*

## KENTILE FLOORS

### I

Defendant Kentile Floors, Inc. (Kentile) owns property in the Borough of South Plainfield. As a result of a municipal-wide revaluation of property, the assessment of Kentile's property was increased in 1977 to $10,597,800, allocated $1,475,000 for land and $9,122,800 to improvements. Similar assessments were made for tax years 1978 and 1979, and Kentile filed appeals requesting a reduction for all three years. Because of a backlog of cases in the former Division of Tax Appeals, however, all three appeals were still pending in the Tax Court in 1980. The cases were consolidated for trial, and on March 24, 1980, the parties negotiated a settlement for all three years, which reduced the property assessment to $8,850,000, allocated $1,475,000 to land and $7,375,000 to improvements. The stipulation of settlement, signed by attorneys for both parties on a Tax Court form, represented that the parties "are satisfied that said settlement and disposition adjusts the assessment of the property to the fair assessable value of the property as of the assessing date." Although the terms of the settlement were placed on the record, the court did not take testimony or receive affidavits of value from any expert or from the tax assessor. On June 25, 1980, the Tax Court entered judgment pursuant to the settlement. Neither the stipulation nor the judgment referred to the Freeze Act.

Notwithstanding the settlement, in 1980 the Borough again assessed the taxpayer's property at $10,597,800, once more allo-

cating $1,475,000 to land and $9,122,800 to improvements. On appeal, the Middlesex County Board of Taxation, applying the Freeze Act to the Tax Court's judgment, reduced the assessment to the 1977, 1978 and 1979 settlement figure of $8,850,000.

The Borough challenged this application of the Freeze Act in its appeal to the Tax Court. The Tax Court granted Kentile's motion for summary judgment and affirmed the Board's decision. 183 *N.J.Super.* 359, 4 *N.J.Tax* 1 (1981). The Appellate Division affirmed. 186 *N.J.Super.* 399 (1982). That court held that a judgment entered pursuant to a settlement agreement is a final judgment within the meaning of the Freeze Act and that the Tax Court was not obliged under *R.* 8:9–5 to enter judgment only after receiving affidavits containing expert proofs attesting to the accuracy of the settled value. We granted certification, 91 *N.J.* 182 (1982), and now affirm.

II

■ The Freeze Act, *N.J.S.A.* 54:2–43, reads:

Where a judgment final has been rendered by the tax court involving real property such judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to such proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where such changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for such appeal. However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.

Final judgments of the Tax Court are "conclusive and binding" upon the municipality for two tax years following the year of the assessment resolved in the judgment. The only exceptions enumerated in the statute involve changes in the value of the property after the assessment date and a new municipal-wide revaluation of property. Neither exception applies to this case. Nonetheless, the Borough maintains that the Freeze Act should be applied only to judgments entered after a full hearing on the merits, and not to judgments entered by settlement. We disagree.

The resolution of these appeals depends on discovering the intention of the Legislature in enacting the Freeze Act. In ascertaining that intent, "the statute must be read in the light of the old law, the mischief sought to be eliminated and the proposed remedy." *Brewer v. Porch,* 53 *N.J.* 167, 174 (1969). We described the purpose of the Freeze Act in a case involving the predecessor of a second Freeze Act, *N.J.S.A.* 54:3–26, which applies to unappealed determinations by the County Board of Taxation:

> The evil which the 'freeze' statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board.

*Newark v. Fischer,* 8 *N.J.* 191, 199–200 (1951); *see Union Terminal Cold Storage Co. v. Spence,* 17 *N.J.* 162, 166 (1954).

The facts of this case fall squarely within the perceived evil. Having taken the Borough to court to resolve the 1977, 1978 and 1979 assessments, the taxpayer should be free, for two additional years, from relitigating these assessments. To hold otherwise would discourage parties from settling their differences and encourage needless litigation. Although the taxpayers in these cases have substantial property holdings, many taxpayers own properties of lesser value. The Freeze Act is intended to protect not only substantial property owners, but also the small property owner for whom any litigation may represent a substantial financial burden.

Prior judicial decisions do not support the notion that the Freeze Act should be applied only following a full hearing on the merits. While certain decisions equate "final judgment" with a judgment on the merits, none supports the contention that the Freeze Act does not apply to a consent judgment. *Riverview Gardens v. North Arlington Borough,* 9 *N.J.* 167 (1952) (1949 judgment based on application of the Freeze Act to 1947 judgment was not a determination on the merits); *Hamilton Gardens, Inc. v. Hamilton Tp.,* 45 *N.J.Super.* 124 (App.Div.

1957) (judgment on merits for 1951 assessment following a contested hearing froze assessment for 1952 and 1953).

Similarly, *In re Strauss,* 28 *N.J.Super.* 526 (App.Div.1953), involved appeals from assessments of $499,000 for tax years 1948 and 1949. The appeal on the 1948 assessment had not yet been completed when the county board, following a full hearing on the merits, reduced the 1949 assessment to $385,000. Ultimately, the parties agreed to settle the 1948 assessment at the value fixed for 1949. Holding that the 1949 assessment was resolved by a judgment on the merits, the Appellate Division applied the Freeze Act to both the 1950 and 1951 tax years. The court declined to consider 1948 as the base year for the application of the Freeze Act, not because the 1948 assessment was resolved by settlement, but because use of that year would deprive the taxpayer of the full two-year protection following the determination of the assessment for 1949. Thus, *Strauss* is consistent with the legislative intent to grant taxpayers the repose contemplated by the Freeze Act.

In *Rothman v. River Edge,* 149 *N.J.Super.* 435 (App.Div.1977), the parties initially disputed assessments for the 1970 and 1971 tax years. Before final resolution of these disagreements, the Division of Tax Appeals, after a hearing, set the 1974 assessment at $800,000. Thereafter, the parties consented to that figure for 1970 and 1971 as well. The Appellate Division held that the 1971 consent judgment triggered application of the Freeze Act for 1972 and 1973, noting that the 1974 judgment resulted from a hearing on the merits. The court further expressed its opinion that even without the 1974 adjudication, a final judgment based on a settlement would be sufficient to trigger the Freeze Act. *Id.* at 440 n. 1. *Accord Springfield Tp. v. Weinberg,* 178 *N.J.Super.* 83, 90 n. 3 (App.Div.1981) (dicta). Furthermore, three recent decisions of the Tax Court hold that judgments entered pursuant to a settlement were frozen under the Act: *Curtiss-Wright Corp. v. Wood-Ridge,* 4 *N.J.Tax* 68, 79–80 (1981); *Edgewater v. United States Life Realty Corp.,* 2 *N.J.Tax* 421, 422 (1981); *1125–1127 Clinton Ave. Assoc. v. Irv-*

*ington,* 2 *N.J.Tax* 386, 387 (1981). We conclude that, as a result of the consent judgment entered for the 1979 assessment, Kentile is entitled to the protection of *N.J.S.A.* 54:2–43, freezing the assessment for 1980 and 1981.

Finally, nothing in this case indicates that the values arrived at by consent are any less reliable than those resulting from a hearing on the merits. Consistent with Tax Court requirements, the parties signed a document acknowledging that the settlement figure was a fair assessment of the property. We conclude that a consent judgment entered by the Tax Court pursuant to a stipulation of settlement is a final judgment entitling the taxpayer to the benefit of the Freeze Act.

### III

The Borough further argues that even if the Freeze Act applies to consent judgments, the judgments are ineffective because they were not entered pursuant to the requirements of *N.J.S.A.* 54:2–42 (repealed effective July 1, 1979). That provision limited the power of the Division of Tax Appeals, an administrative agency in the executive branch of government, to enter consent judgments only when the facts were verified by qualified experts. The Legislature, however, properly deferred to the Supreme Court with respect to the promulgation of rules governing practice and procedure before the Tax Court. *Winberry v. Salisbury,* 5 *N.J.* 240 (1950). Our rule provides expressly for consent judgments "entered upon stipulation of the parties supported by such proof as the Court may require." *R.* 8:9–5. Unlike the statutory requirement that governed the Division of Tax Appeals, the court rule governing Tax Court procedures does not require that settlements be supported by verified statements of experts. In this case, the attorney for the Borough advised the taxpayer that under the new practice a verified affidavit was not necessary to support the stipulation, which was entered pursuant to the rules of the Tax Court.

Because a consent judgment is a judgment on the merits, we hold that it is a final judgment for purposes of the Freeze Act.

We hold further that the procedures followed by the Tax Court conformed with the requirements of *R.* 8:9–5. Consequently, we affirm the judgment of the Appellate Division.

## SOMERVILLE INDUSTRIAL PARK

Plaintiff, Somerville Industrial Park (Somerville Industrial), owns three separate parcels of land in South Plainfield. Following the municipal-wide revaluation effective for tax year 1977, the Borough assessed the properties at $1,811,600, $830,000 and $1,279,200, respectively. Somerville Industrial filed appeals for that year, and for the next three years, during which the valuations remained constant. The 1977, 1978 and 1979 appeals were consolidated by the Tax Court for trial on October 27, 1980. On that date, the parties reached an agreement, valuing the properties at $1,325,000, $625,000 and $875,000, respectively. At the hearing both parties stated to the court that the settlement figures represented the fair assessable values of the various properties. The Borough attorney further represented that the South Plainfield assessor concurred in the valuation. However, no affidavits were submitted, and the parties reserved the question whether the settlement of the 1979 assessment froze that assessment for 1980.

Somerville Industrial then moved for application of the Freeze Act to the complete assessments of two of the three properties. With respect to the third tract, in December, 1978 Somerville Industrial had sold a portion of the land and dedicated another portion to the Borough for roads. The sale occurred after October 1, 1978, the date for determining assessments for 1979, *see N.J.S.A.* 54:4–23, so the assessment was not changed for that year. For 1980, however, the Borough reduced the land assessment by $257,600 to $177,400; the assessment for improvements remained unchanged. Concerning this tract, Somerville Industrial requested the application of the Freeze Act to the 1979 assessment for improvements only. After a hearing, the Tax Court entered judgment freezing the 1979 assessment for two

years on both land and improvements for the first two tracts and for improvements only on the third tract.

On appeal by the Borough, the Appellate Division reversed, holding that the municipality had entered into the settlements on the assumption that the Freeze Act applied only to the 1977 assessment and that absent a "meeting of the minds" the Act did not freeze the assessment. Consistent with its view that the parties had not reached an agreement, the court gave the taxpayer the option of setting aside the entire settlement. We granted certification, 91 *N.J.* 185 (1982), and now reverse and reinstate the judgment of the Tax Court.

As we declared in *Kentile Floors, supra* at 489, a consent judgment is a final judgment under the Freeze Act. Furthermore, the Borough attorney acknowledged both the accuracy of the assessment and the approval of the municipal assessor. Although the settlement was not expressed on a standard Tax Court form, the trial court did not abuse its discretion in accepting the consent.

■ We reject the Borough's contention that it should not automatically be bound by the settlement because it never intended to bind itself to a five-year freeze of the assessment. When a case is settled, the Freeze Act may be invoked at the exclusive option of the taxpayer, not the municipality. *See Hasbrouck Heights v. Division of Tax Appeals,* 41 *N.J.* 492, 499–500 (1964); *Union Terminal Cold Storage Co.,* 17 *N.J.* at 167; *Bloomfield v. Parkway Indus. Center,* 3 *N.J.Tax* 220, 231 (1981). By agreeing separately to the assessments for the three tax years, the Borough bound itself for an additional two years, regardless of its subjective intention. Any other result would undermine the express purpose of the statute—the protection of the taxpayer from the annoyance and expense of repeated tax appeals.

We further note that this ruling does not excessively restrict the options available to the municipality. Taxpayers may waive their rights under the Freeze Act by agreeing that a stipulated valuation for a particular tax year will not preclude reassess-

ment by the municipality in the following year. Moreover, when more than one year's assessment is in dispute, a municipality may settle only the first year. In this case, for example, the Borough could have avoided the impact of the Freeze Act for 1980 and 1981 by settling only the 1977 assessment, allowing the Freeze Act to apply for the next two years, and issuing a new valuation for 1980. As noted, the Freeze Act does not apply when the municipality can prove a change in value or when a district-wide revaluation has occurred. Otherwise, a taxpayer has the right to the repose granted by the statute.

With respect to the third tract, the Tax Court acted properly in granting the request of Somerville Industrial to freeze the 1979 assessment for improvements only. The opposite result would force a taxpayer to choose between retaining the Freeze Act protection or foregoing a sale of part of the premises, a dilemma not contemplated by the statute.

We reverse the judgment of the Appellate Division and reinstate the judgment of the Tax Court granting application of the Freeze Act.

*For affirmance in South Plainfield and reversal and reinstatement in Somerville Industrial Park* —Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

Opposed—None.