LARIO, J.T.C.
This is a motion by plaintiff, Jack Nissim & Sons, Inc., (Nissim) for application of the Freeze Act, N.J.S.A. 54:51A-8, to freeze the 1986 assessment on its property to the assessment *466 entered by this court’s 1985 tax year judgment. The unrefuted facts as certified by plaintiff are as follows:
Nissim is the owner of commercial property located on Route 206, Bordentown Township, and identified on the township’s tax map as Block 1.01, Lots 3, 4, 5, 7 and 8. Nissim previously filed with this court a direct tax appeal alleging that the 1985 assessment on this property of land-$377,100, improvements-$1,172,700, total-$l,549,800, was in excess of true value and discriminatory.
The appeal was not disposed of in either 1985 or 1986. Pending the 1985 appeal the township continued the $1,549,800 assessment for the 1986 tax year. Tax bills for the 1986 assessment were received and paid in full by Nissim. No appeal for the 1986 tax year was filed by taxpayer.
On April 30, 1987, a final judgment based upon a stipulation of settlement was entered by this court reducing the 1985 assessment to land-$377,100, improvements-$973,000, for a total of $1,350,100. Subsequent to April 30, 1987 (the exact date was not given) the taxpayer received credit for the reduction resulting from the 1985 tax-year judgment. When credit for the 1986 paid tax bill had not been received, taxpayer’s attorney, who represented it in the appeal and throughout the proceedings, informally attempted to secure a refund for 1986 but her efforts were unsuccessful. On January 12, 1989, plaintiff filed this motion to freeze the 1986 assessment of the subject property to reflect the assessment as finalized by the 1985 tax-year judgment.
The Freeze Act applicable to Tax Court judgments, L. 1983, c. 45 directs:
Where a final judgment has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessing date. [N.J.S.A. 54:51A-8]
The Freeze Act applies not only to an adjudicated judgment but also to a consent judgment. South Plainfield v. Kentile *467 Floors, Inc., 92 N.J. 483, 457 A.2d 450 (1983). The taxpayer has not included in its motion a request for Freeze Act relief for the tax year 1987 because a new assessment was levied in 1987 based upon improvements made to the property in that year. However, taxpayer does allege that there were no improvements to the property or changes in value for the tax year 1986 and that a revaluation did not take place in the taxing district after October 1, 1984.
The taxing district does not dispute that, for the tax year 1986, the subject property did not change in value nor was a revaluation implemented by it. Instead, the township opposes this motion contending that, because the motion was brought 20 months after the entry of the final judgment, a hardship would be endured by the township if the motion were granted; therefore, Nissim should be estopped from receiving the relief requested.
In Clearview Gardens v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 482 A.2d 523 (App.Div.1984), Judge Dreier speaking for the Appellate Division stated in interpreting the Freeze Act:
The wording of the Freeze Act shows that its application is mandatory and self-executing. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166-168, 110 A.2d 110 (1954).
Each tax assessor in this State is bound to assess the property at its fair market value as of October 1st of each year (N.J.S.A. 54:4-23), unless the statutory law or a final judgment of a county board or court of competent jurisdiction directs otherwise. The Tax Court Freeze Act quoted above and the County Board Freeze Act (N.J.S.A. 54:3-26) impose a different duty upon the assessor. [Footnote omitted] The statutes specifically provide that where there has been a change in value occurring after the assessment date, the Freeze Act valuations may be modified where a complaint is filed alleging such change or if there is a general revaluation of real property in the community.
If the final judgment is rendered prior to the assessing date, the assessor should note the change for the two freeze years as well as for the year adjudicated by the court. If, however, the final judgment is rendered after the assessing date, and the assessor has followed the mandate of N.J.S.A. 54:4-23, listing the properties at this higher assessed value, some action need be taken by the taxpayer to effect a change in the assessment. As noted by Judge Evers in Curtiss Wright Corp. v. Wood-Ridge, “[i]n such instances it is necessary for the property owner to affirmatively seek the application of the freeze act.” 4 N.J.Tax [68] at 73 (1982). Once this information is brought to *468 the assessor’s attention, the mandatory and self-executing nature of the Freeze Act requires the assessor to comply. [196 N.J.Super. at 328-329, 482 A.2d 523]
Thus, because the 1985 tax-year final judgment was entered on April 30, 1987, which was after the 1986 tax year assessment had been entered and certified by the county board of taxation, in order for the subject property to receive the benefits of the Freeze Act for the tax year 1986 affirmative action for the act’s application was necessary. Ibid.
Within the Freeze Act there is no specified time limitation, after entry of base-year judgment, to seek affirmative relief; nor is there any such time limitation in any other legislation or court rule. Since there exists no applicable statute of limitations we must now ascertain whether the facts presented here justify the imposition of the defense of the doctrine of laches. This equitable principle was thoroughly researched and articulated by Justice Schreiber in Lavin v. Hackensack Bd. of Ed., 90 N.J. 145, 447 A.2d 516 (1982) wherein he stated:
We turn next to the doctrine of laches, an equitable defense that may be interposed in the absence of the statute of limitations. The time constraints of laches, unlike the periods prescribed by the statute of limitations, are not fixed but are characteristically flexible. Pomeroy defines laches as "such neglect or omission to assert a right as, taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.” 2 Equity Jurisprudence § 419, at 171-72 (5th ed. 1941). [at 151]
In concluding whether the doctrine should be applied “[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay are the most important factors that a court considers and weighs.” Id. 90 N.J. at 152, 447 A.2d 516. “Laches involves more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party.” West Jersey Title & Guarantee Co. v. Industrial Trust Co., 27 N.J. 144, 153, 141 A.2d 782 (1958).
In the instant case the 1985 tax year judgment was entered on April 30, 1987. Sometime thereafter, the exact date not being shown, a credit was received for the reduction resulting therefrom. In support of its motion plaintiff certifies that its *469 attorney, after receiving plaintiffs 1985 credit, relied upon the Freeze Act for a refund to be made for 1986. After not receiving it automatically from the township she sought the adjustment informally. After her informal efforts proved to be unsuccessful this formal motion was filed. This certification was not refuted by the township.
Clearview Gardens, supra, cited Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 110 A.2d 110 (1954) for the proposition that the Freeze Act’s application is “mandatory and self-executing.” However, Judge Drier recognized that this self-executing feature presumes the existence of a final judgment for a base year prior to the assessment date of a freeze year, but in cases where judgments are entered after the subsequent year’s assessment has been certified, the tax collector should not automatically amend his tax records without “some action” being taken to correct the assessment. The Freeze Act is binding upon the municipality for the judgment year and the two succeeding years, absent a revaluation or a change in value. Clearview, supra, 196 N.J.Super. at 329, 482 A.2d 523; Curtis Wright Corp. v. Wood-Ridge, 4 N.J.Tax 68, 73 (Tax Ct.1982). Unless proof is presented of the existence of either of said statutory exceptions the tax judge must apply the Freeze Act. Brunetti v. New Milford Boro. (App.Div.1989) (slip opinion at 12). “Because the Freeze Act’s very wording shows that its application is mandatory and self-executing, absent a change in the property’s value, the judge was required to apply the act for 1980 and 1981. N.J.S.A. 54:51A-8; Union, 17 N.J. at 167, 110 A.2d 110.” Id.; emphasis supplied (slip opinion at 14).
The present case presents a perfect example of why in those cases where final judgments are entered after entry of subsequent years’ assessments, application of the act, should be mandatory but not self-executing. The taxing district is entitled to defend application of the act by presenting evidence of the existence of either of the two statutory exceptions. Here *470 the act applies to the 1986 assessment but, because of improvements to the property, not to the 1987 assessment. Although a tax collector would know if a revaluation had been implemented, he ordinarily would not have knowledge as to whether a property had sustained a change in value sufficient to defeat implementation of the act, and therefore, he should not automatically amend his tax records. Additionally, if the collector refunded taxes without written authority, it is questionable whether the taxing district would be reimbursed its proportionate share of county taxes.
Although Judge Drier also stated in Clearview Gardens, supra, that some action need be taken by the “taxpayer,” he obviously was referring to those cases where no other action was initiated by anyone else. In that case, the court was not presented with the question of who is required to initiate the affirmative action. There is no statute, court rule or case law directing who must initiate the required action. Nor is there any authority to prevent the taxing district from: (1) initiating a motion for Freeze Act relief to a subsequent tax year for which no appeal has been filed;[1] or, (2) adopting a tax-refund resolution as suggested by Justice Burling in his concurring opinion in Union Terminal Cold Storage Co. v. Spence, supra. [2] That case was initiated with a complaint in lieu of prerogative writs filed by the property owner against the director of revenue and finance of Jersey City to compel him to comply with the provisions of the Freeze Act to change the 1953 assessment and taxes due on its property, as shown on the director's tax books and records, to accord with a Division of Tax Appeals judgment entered in 1953 reducing the property’s *471 1951 assessment. The owner had paid the amount of taxes due for 1953 as reduced and, although payment was accepted, the tax collector refused to issue a receipt as “paid in full.” The city contended it lacked authority to accept less than the full amount as shown on its books and records and since the taxpayer had not appealed the 1953 assessment it was out of time. The Supreme Court ruled that the director was incorrect and that under NJ.S.A. 54:4-8.2[3] the tax collector was authorized to allow the credit required by the Freeze Act.
Justice Burling agreed with the majority that the Freeze Act was binding against the city but disagreed as to the authority and procedure, stating in his concurring opinion:
It seems to me that R.S. 54:2-43, as amended, supra, [now N.J.S.A. 54:51A-8] is mandatory but not self-executing. In other words, it is binding (if there is no increase in property value) upon the assessor in making of assessments (for the two assessment years succeeding the assessment year subjected to adjudication).
The collector of taxes is not authorized by R.S. 54:23-43, as amended, supra, on his own initiative to collect a reduced tax from the taxpayer. The collector’s statutory duties are to complete and deliver tax bills as soon as the tax duplicate is delivered to him. R.S. 54:4-64. The duplicate must be delivered to him on or before April 1. R.S. 54:4-55. The collector must enter the date and amount of payments made on the duplicate and in his cash book. R.S. 54:4-71. On March 1 of the succeeding year he must file with the treasurer of the taxing *472 district a statement of the amount of taxes received and of the amount remaining unpaid. R.S. 54:4-91, as amended by L. 1944, c. 115, sec. 1.
The majority held that L. 1940, c. 229, sec. 1, N.J.S.A. 54:4-8.2 authorizes the collector to reduce taxes for subsequent years under R.S. 54:2-43, as amended, supra, in addition to collecting the adjudicated reduced tax for the assessment for the year appealed. It seems to me it applies only to the taxes for the assessment year appealed.
However, statutory authority for correction of the situation exists. Under R.S. 54:4-99 and R.S. 54:4-100, as amended by L. 1949, c. 202, sec. 1, the municipal governing body is authorized to make abatement, revision, adjustment and settlement of past due taxes, especially where the taxes are “illegal in whole, or in part.” The provisions of R.S. 54:4-99, supra, and R.S. 54:4-100, as amended, supra, seem to require the municipal governing body to act only on application by the taxpayer. The action of the municipal governing body is qualified by the authority vested in the governing body, R.S. 54:4-99, to effectuate the adjustment of taxes “as it shall deem equitable and just and be for the best interests of the municipality.” Under the circumstances of the present case, the quoted language appears to refer to the mode of allowance of adjustment of taxes. [17 N.J. 162, 168-169, 110 A.2d 110 (1954)]
When plaintiffs attorney informally requested a refund for 1986, if the municipality believed that it did not have the statutory authority to grant a refund by the adoption of a resolution, it was not unreasonable for it to have so advised plaintiff and to have suggested that the present motion be formally filed by plaintiff or by plaintiff and itself jointly.
In the instant case I find that it was not unreasonable for plaintiffs attorney to expect, after her request, that the taxing district would institute proper procedures to lawfully refund plaintiffs taxes or to advise plaintiff as to what the taxing district required to effectuate a refund. I further find that the length of time that elapsed between the date of entry of the base-year judgment and the filing of this motion was not unduly long nor unreasonable. Additionally, and more important, I find that the municipality should have known when the 1985 appeal was originally filed that the assessment might be lowered for that year and possibly for the following two years; and it certainly knew on April 30, 1987 that plaintiff was entitled to a refund of its 1986 taxes. Having this knowledge when its 1986 and 1987 budgets were being considered, provisions should have been made by the township for this possibility. The township has failed to establish that payment of this *473 rightful refund of which it has had use since April 30, 1987, would cause a hardship to it. I further find that there has been no detriment or prejudice to the municipality’s defense of this motion caused by plaintiff’s not having filed this motion prior to January 1989.
Plaintiff’s motion for application of the Freeze Act for the tax year 1986 is granted.

Although the Freeze Act may be invoked at the express option of the taxpayer, not the municipality, South Plainfield v. Kentile Floors, Inc., 92 N.J. 483, 491, 457 A.2d 450 (1983), presumably the owner would not object to an application to lower his assessment.

See also Brunetti v. New Milford Boro., supra, in which Freeze Act relief was requested by, and granted to, the property owner and third parties (tenants) jointly.

N.J.S.A. 54:4-8.2 provides:
If any taxpayer shall have paid the taxes upon any assessment of property under the provisions of chapter four of Title 54 of the Revised Statutes and shall, upon appeal, have obtained a judgment of the county board of taxation granting a reduction in the said assessment from which neither the taxpayer nor the municipality shall have duly appealed, or shall have obtained a judgment of the State Board of Tax Appeals granting a reduction in such assessment or confirming a reduction granted by the county board of any part thereof, such taxpayer may claim and the collector of taxes of the municipality shall allow a credit, in an amount equal to the appropriate refund incident to such reduction of said assessment against any taxes then due or to become due on such property; provided, such property is at that time assessed against the same owner as it was at the time the appealed assessment was made. If said assessment shall be further litigated the taxes found to be due as a result of such litigation, either by way of increase or reduction, shall be adjusted in like manner.